Filed April 3, 1895.

———————◆———————

No. 16,959.

### SPRAKER v. JENNERS.

REAL ESTATE.—*Contract of Sale and Purchase.*—*Construction.*—In a written agreement for the sale and conveyance of land, of which the vendor had a sheriff's certificate of purchase, was the following clause: "In case there is a redemption of said land I [the vendor] am not to be under any obligation to make a deed to said premises, and I am to refund to the purchaser said $300 [amount paid on purchase price]."

*Held*, that such provision was simply intended to provide for an emergency in case he, the vendor, found himself unable to convey because unable to procure a sheriff's deed.

SAME.—*Contract of Sale and Purchase.*—*Specific Performance.*—*Defense.* An attempted redemption, which was set aside as void in an action by the vendor, constituted no defense in an action by the vendor for specific performance.

From the Tippecanoe Superior Court.

*W. H. Bryan* and *C. C. Shirley*, for appellant.

*A. W. Caldwell*, *J. L. Caldwell*, *W. DeW. Wallace* and *S. P. Baird*, for appellee.

HOWARD, J.—On May 2, 1887, appellant and appellee entered into the following written agreement:

"KOKOMO, IND., May 2, 1887.

"If I receive the title in fee simple to the following

described real estate, in Howard county, Indiana, to wit: The southeast quarter of the southwest quarter of section 35, township 24 north, range 3 east, except 18 rods square in the southeast corner of said tract of land, I agree, as soon after the 29th day of May, 1887, as can conveniently be done, to convey said real estate to David C. Spraker by a good and sufficient warranty deed, and to furnish him an abstract of title to said lands upon the following terms: The said Spraker shall pay me for said real estate at the rate of $50 per acre, after deducting the said 2 acres and the portion of the same which constitutes the right of way of the railroad that now crosses said land or that may have first secured the said right of way; $300 of the same to be paid this day and a sufficient amount in addition to be paid, on the delivery of deed, in cash to make one-third of the purchase-money, and the remaining two-thirds of purchase-money to be paid by the purchaser executing his two promissory notes in equal payments or amounts, one due in nine and one due in eighteen months from day of delivery of deed, each to bear interest at the rate of 6 per cent. per annum from date, and to be secured by mortgage on said real estate. Now, the source through which I expect to secure title to said real estate is a sheriff's certificate that I hold upon the same, upon which the time of redemption expires on the 29th day of May, 1887, and in case there is no redemption of said land, I will at such time be able to make such deed; but in case there is a redemption of said land I am not to be under any obligation to make a deed to said premises, and I am to refund to the purchaser said $300, and in order to prevent a redemption of said real estate so far as I can I will take an assignment of all claims now held by J. V. Hoss, J. C. Blackledge, and Charles E. Hendrey; it is to be understood

that right of way of said railroad shall not be to exceed 60 feet in width.          Francis J. Jenners.

"I accept the terms of the above contract of purchase this 2d day of May, 1887.          D. C. Spraker."

On the same day, in pursuance of said written agreement, appellee paid a judgment in favor of Blackledge and Hendrey, amounting to $128, which was a lien on the lands in dispute junior to appellee's mortgage. And on the next day, May 3, 1887, in further pursuance of said agreement, appellee caused J. V. Hoss to assign to appellant, on the mortgage records, two mortgages which said Hoss held on the lands in dispute, and paid said Hoss $500 therefor, said mortgages being junior to appellee's mortgage.

Prior to the expiration of the year for redemption, that is, on or before May 29, 1887, Howard L. Bull, as a member, and on behalf of the firm of J. J. Hoss & Co., went to the office of the clerk of Howard county to redeem the real estate in controversy. He made an affidavit which was accepted by the clerk, and paid to the clerk the amount necessary to redeem from appellee's purchase, and took from the clerk a certificate of redemption. The affidavit and certificate of redemption were both lost, and the clerk made no record of the redemption.

On June 3, 1887, the appellee filed his complaint against all the members of the firm of J. J. Hoss & Co., alleging that the attempted redemption was illegal and void as not being made in compliance with the requirements of the statute, and asking that it be set aside, and that the clerk be directed to return to the said J. J. Hoss & Co. the amount so paid by them in such attempted redemption. The cause was submitted by agreement, and a decree was entered in accordance with the prayer of the complaint. It further appears that J. J. Hoss & Co.,

received from appellee the amount of their claim, and to secure which they made the attempted redemption.

On June 4, 1887, the redemption having been set aside, appellee took out a sheriff's deed for the land. After his sheriff's deed was placed on record, the appellee executed and tendered to appellant a warranty deed for the land in question, together with an abstract of title to the same. This deed the appellant refused to accept, and brought his action to recover the $300 paid by him at the time of the contract.

To this complaint, the appellee filed a counterclaim, setting out a full history of the case, and asking for specific performance of the contract of purchase.

Other pleadings were filed, and the cause was submitted to the court for trial. There was a finding and decree in favor of the appellee, enforcing the contract of sale as prayed for in the counterclaim.

Many questions are raised in the briefs of counsel, but we think the only issues to be decided are as to the meaning of the contract, and whether there was such a redemption as abrogated the agreement to purchase on the part of the appellant.

Appellant contends that there was a redemption in fact by J. J. Hoss & Co. from the purchase by appellee, and that notwithstanding this redemption was set aside as null and void by the Howard Circuit Court, yet the redemption, as a fact, made invalid appellant's contract of purchase, and he was at once entitled to the $300 advanced by him.

The contract, besides setting out the terms of sale, set out plainly appellee's source of title. Appellant therefore knew, when he agreed to purchase the land, that appellee held it by a sheriff's certificate, and that it was only through a sheriff's deed that appellee would be enabled to convey to appellant. The sheriff's deed could

not be procured until after the expiration of the year of redemption, May 29, 1887. But it was possible that there might be redemption by some lien-holder before that time, in which case he would be unable to make a deed to appellant.

To protect appellee against such a contingency, it was provided in the contract that "in case there is a redemption of said land, I am not to be under any obligation to make a deed to said premises, and I am to refund to the purchaser said $300."

We do not think this provision was intended to prevent appellee from making a deed to appellant in case he should be able to procure a sheriff's deed to enable him to convey title. On the contrary, it was simply intended to provide for an emergency in case he found himself unable to convey because unable to procure a sheriff's deed. A redemption might tie his hands, but, in any case, if he were able to make a deed to appellant, he was bound to do so. His undertaking was: "If I secure the title in fee simple to the following described real estate (describing it), I agree, as soon after the 29th day of May, 1887, as can be conveniently done, to convey said real estate to David C. Spraker by a good and sufficient warranty deed."

The suit which he brought to set aside the redemption by J. J. Hoss & Co. as being null and void was, as it seems to us, but what he was required to do in carrying out the spirit of his contract. If the court had found that redemption good, undoubtedly he would be unable to make a deed to appellant, not having title himself; but the court having decreed the redemption void, we think that not only was he at liberty to make a deed to appellant, but he was bound to do so by the terms of his contract of sale.

The question was before the trial court to determine

whether in fact there had been a redemption, in the manner required by statute. The court heard the evidence on that question; and we think there was evidence before the court to show that no redemption had taken place. Moreover we think this evidence was decisive in its character. The deputy clerk who testified, acknowledged that this form of redemption seldom occurred in his office, and we think it clearly appears from his evidence that the requirements of the statute were not complied with by him, nor by the redemptioner.

Neither is it true that there is any cloud on the title held by appellee. Margery Millikan purchased the land from the mortgagors after the foreclosure of their mortgage by appellee, and after the purchase by appellee of that land at sheriff's sale. She could, by this purchase, acquire no better title than the mortgagors had themselves, that is, the equity of redemption. But she suffered the year from the day of sale to go by without redeeming, and thus her equity of redemption was foreclosed. She has no title, but is subject to be dispossessed by the owner at once. The deed tendered by appellee to appellant conveys good title to the land.

We find no error in the record.

The judgment is affirmed.

Filed April 3, 1895.